May it please the Court, Kelly Dunn for the appellant Beatrice Lounsbury. This case involves an application for social security disability insurance benefits. The administrative law judge denied Ms. Lounsbury's application on the basis that she could perform the job of companion, to which he found, based on vocational expert evidence, that she had transferable skills from her prior work. The factual findings are not contested. The ALJ's factual findings we don't have any issue with. The case is one of regulatory interpretation. And I'm going to just go to the core issue because of the time that we have here. The core issue, we are relying on language within the medical vocational guidelines commonly referred to as the grids, section 202.00C, which says that in order for a person of advanced age who is limited to sedentary or light work, which is the factual situation here, quote, we will find that you cannot make an adjustment to other work. I'm sorry. I'm reading the wrong section there. For individuals of advanced age who can no longer perform vocationally relevant past work or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work, then the limitations in vocational adaptability represented by the restriction to light work warrant a finding of disabled. So the key words here are significant range of semi-skilled or skilled work and vocational adaptability does not warrant a finding of disabled. The commissioner is relying on language in 404.1566 that on its face seems to suggest their position, which is 1566 says that work exists in the economy if it exists in significant numbers of jobs, whether in one occupation or more than one occupation. That section also says, however, if work that you can do does exist in the national economy, we will determine that you are not disabled. So if you read that, if work that you can do does exist, that tends to suggest that if it exists in substantial numbers, not in a significant range of occupations. So is there a conflict? There's no conflict here. Work you can do does not mean work you have the capacity to do. We have to take a step back and look at the grids, the overall framework here. When you are determining at the fifth step of disability whether there is other work an individual can perform, there's two aspects to that. Does the individual have the capacity, the residual functional capacity, meaning the mental and physical ability to do the work, and can the individual vocationally adjust to the other work? Vocational adjustment takes into account the person's age, their education, and their work experience. And going back to the 202 language I quoted, vocational adaptability or vocational adjustment, that's the critical factor here. So in 1566, on which the commissioner relies, the sentence that says if work that you can do does exist, i.e., exists in substantial numbers, we will find you are disabled, that phrase can do incorporates the legal concept of vocational adjustment. This is most evident from the fact, if you look at the grids and you take an individual who's of advanced age, 55 years old, the grids say if that person, if skills aren't an issue, if that person has an unskilled work history, that person, even if they can perform the entire light and sedentary occupational base, which is 1,600 occupations, the grid says that person is disabled. The grid says that not because that person doesn't have the capacity, they do have the capacity for those jobs, the grid says that because they cannot vocationally adapt. So the only way the language in 1566 is reconciled with the grid is if that phrase work that you can do incorporates the concept of vocational adaptability. So that brings into the determination, so all 1566 is saying if you can do work, i.e., you can have the capacity and you can adapt to work, then we'll say you're not disabled. We have no problem with that. Now, when you get into adaptability, what is that? Look at 404, 1568d. D4 deals with transferability of skills. It says we will find that you cannot make an adjustment to other work unless you have skills you can transfer to other semi-skilled or skilled work. So that's setting the bar. We can't find vocational adaptability unless you have transferable skills. It is not saying if you do have any transferable skills, we will find vocational adaptability. It's just saying to find vocational adaptability, you have to have at least some transferable skills. So where do we find what does constitute vocational adaptability? We find that in the grid language itself. And section 202.00c on which we're relying, that sets forth what is the language for finding that vocational adaptability. And now in that background, reading it, it seems very clear that if you only have skills that are readily transferable to a significant range, then the limitations in vocational adaptability warrant a finding of disability. So it's not enough to just have skills that can be transferred from one job to another. You must have enough skills, considering all of the factors, to have vocational adaptability. And vocational adaptability is defined in the grid rules themselves. So let me just get this straight. So if you could only work one slice of the job description, but there are 100,000 of those available in the economy, you would then be disabled because you wouldn't have a significant range? Well, I think that's a good question, and I don't think we have an answer, given your example of 100,000 jobs. Not 1,000. Well, 1,000, I would say no, that's not enough. One occupation and 1,000 jobs is not enough because that significant range here, it's not defined. It doesn't have to define it for purposes of resolving this case. What is a significant? It only has to say what is not a significant range. One occupation with 1,500 jobs, in comparison to the entire semi-skilled and skilled occupational base, just under any normal interpretation of the words, could not constitute a significant range. I just want to understand you, make sure I've got your argument. You're saying that significant range could encompass either different occupations or, if it were more limited to a single occupation, it could encompass the volume of jobs available, that it has that kind of flexibility in interpretation? I think that would be a reasonable interpretation. Here, she can be a companion, correct? Correct. And you say that's not a significant range because of the numbers or because of the vocational adaptability? Well, because of the combination. It's one occupation with a fairly limited number of jobs, only 1,600 in the region. I'm not sure I would concede that one. That's what I was trying to have. Right. I'm not quite sure how the social security judge would, how you would decide if the there's 3,000 jobs. So I guess I interpreted significant range to be actual what I'll call occupations. That might not be a technical term, but you're saying it can be either occupations or numbers. I think it probably, the language supports occupations. I guess I was kind of conceding to you a little too quickly there on 100,000 jobs, because all of the language, range of work is defined in Social Security ruling 8310 as in terms of occupations. Throughout the language discussing the grids, it's in terms of occupations. It's not in terms of jobs. So a significant range of semi-skilled or skilled work, range of work being the occupations, really is saying a significant range of occupations. So I think that is a more reasonable interpretation is that you need more than one occupation. You need a significant range, whatever that may be. If one of those occupations happens to be the most populous job in the country, that makes maybe the decision a little bit harder. But... Are you saying that if there are jobs available for which she has the capacity to perform, but she doesn't like the jobs that are available in this one area, she's disabled? No. It has nothing to do with whether she likes the jobs or not. It has to do with whether she can vocationally adjust to the jobs, as the grid has set up the framework for that vocational adjustment assessment. So whether an individual likes the job or does not like the job is irrelevant, as is whether they would be hired. Well, if she has the capacity to perform it, I'm not clear what you're saying. Well, just as, again, if you go back to the grid of somebody who's 55 years old who can do 1,600 occupations at the unskilled, light, and sedentary, they can do that job. But the administration has administratively said, we will say that they can't vocationally adjust to that job. Here they're saying when you're dealing with transferable skills, we are going to say as a matter of policy, you cannot vocationally adjust to jobs to which you may have skills that can be transferred unless there is a significant range of those jobs that exist. Social Security ruling 8241 kind of points this out because it talks about jobs that are at the lowest end of the semi-skilled spectrum generally won't be transferable. And that means whereas jobs at the highest end where there's a lot more skills that are transferable, those can transfer. It uses the very job we're dealing with in this case, nurse's aid, as one in which normally you can't transfer because there's not enough skill transferability. It's not saying there's no skills that can be transferred. It's saying there's not enough, i.e., it doesn't meet that significant range criteria. Your time has expired. Good morning, Your Honors. I'm Sarah Ryan representing the Social Security Administration. Counsel is relying at heart on a rather tortured reading of Social Security ruling 8310 and his interpretation of how guideline rule 202.00c should be applied to find that the claimant in this case does not have sufficient transferability of skills to meet the commissioner's ultimate burden that there are a significant number of other jobs in the economy that she's capable of performing. We have to go back to the Social Security Act, which states that the commissioner has the burden of proving that there are other jobs or significant other work in the economy that she can perform if it's shown that she can't do her past work, which is the case here. What is the occupation companion? I've never heard of that before. It seems like that would foreclose anyone from getting social. Here we've got a person who is really disabled with a whole bunch of things. Do you have a cell phone on? Would you leave the courtroom if you have a cell phone? Thank you. The companion is defined by the V.E. as by what? By the vocational expert. I'm sorry, Your Honor. As one, as a subset of the job that she had previously performed, which is nurse's aid, and the vocational expert had identified one of the skills that the claimant acquired as being patient care, and that a subset of patient care was personal care, which was one of the skills required in the job of companion that made the job of companion as being a semi-skilled job. And then attached to my brief is the Dictionary of Occupational Titles, Job Description of Companion, and it's a personal care job, which can encompass a number of duties. Companion, accompanying someone, attending to personal needs. It even includes things as personal as playing cards or accompanying the attendee to social events and so forth. Well, here's a person who has a problem with easy fatigue, pain in the joints, medical evaluations of degenerative joint disease, bilateral local extremity, knee, ankle, heel, foot pain, pain in the spine. Now, it just seems to me here's a pretty legitimate situation where someone is disabled. And I guess in the way you're defining companion, anyone in a wheelchair or blind or whatever could be a companion. And it seems awfully strange to me where someone who has this many actual physical problems is not found to be disabled. Nevertheless, she has not challenged the ALJ's finding that she's capable of exertional work. And so that's not before the court. She has been found capable by the medical doctors of exertional work with very little significant or very little non-exertional limitations limited to occasional stooping, kneeling, et cetera. And for that reason, the court is not being asked to consider that question. It's being asked to assume that she is capable of performing companion as testified by the vocational expert. But would that single occupational category constitute a significant range of skilled or semi-skilled work? That's the difficulty I'm having in terms of the interpretation. The interpretation that the claimant is asking you to accept is based on his reading of Social Security ruling 8310. And 8310 has in its glossary the definition, range of work occupations existing at an exertional level. And I submit to you that what that's trying to do is define the concept of the guidelines when they're talking about occupations at the sedentary level, the light level, the medium level. They're talking about the range of work and the concept of the guidelines as encompassing a range of work, as encompassing the number of occupations within the sedentary base or within the light base, within the exertional base. One of those, I mean, she has a very limited thing she can be. She can be a companion, that's it. And given her age and other background, the question is, does that represent a significant range? But the Commissioner's burden is only to show that she can do a significant number of jobs, not occupations. And the Commissioner companion and the vocational expert. And that's one job. Yes. The vocational expert testified that regionally or locally there were 1,639 of such jobs available, and nationally there were 65,000 jobs. And the case law of this circuit is that that's well within what has traditionally been found to be a significant number under Barker or Menal, so that the vocational expert can do a significant number of jobs. The difference between you and opposing counsel is that range means a range of different kinds of jobs, whereas to you range means only the fact there's one job. The difference is that he's trying to impose the glossary definition of 8310 to define occupation as being a significant number of different kinds of jobs, rather than numbers of jobs, as the statute and our regulations say. This is the only place you'll find in the regulations where that interpretation would prevail, and it would be a completely novel interpretation. At every other point in our regulations and in the Act itself, it says, for example, in the Social Security Act, for purposes of the preceding sentence where they're talking about doing substantial gainful work in the economy, with respect to any individual, work which exists in the national economy means work which exists in significant numbers. It does not say work which exists in significant numbers of different types of occupations. I think the difficulty is this word range. That's our problem. And so is there something, does the Commissioner have any opinions or rulings that we might look to? Do you want to wait for the question or do you want to? Okay. The question is, is this an area where we look to Chevron deference or some other kind of deference, and my question would be whether there's some kind of written rulings interpreting this that we would look to, or are we left basically just with I'm suggesting that you can reconcile it internally within Ruling 8310 itself, because in 8310, the ruling itself points out that the ultimate question is whether there are a significant number of jobs in one or more occupations. And so where there is what appears to be a conflict within the ruling that's in question here, the ruling itself has told you that the ultimate question is whether there are a significant number of jobs in one or more occupations. So I would say we do not have further answer than that. The occupational base as defined in 8310 is that which is based on RFC alone. It consists of a full range of occupations, each of which represents a number of jobs in the economy. And then it goes on to talk about the range of work being occupations existing at an exertional level. So what 8310 is doing is really explaining what the guidelines or the grids are. It's just a group of occupations within exertional levels. It's not trying to tell you what 202.00c means when it talks about a significant range of semiskilled work, that a significant range of work in 202.00c is not being defined by the glossary of 8310. It was never intended to do that, and it doesn't make sense if you try to plug that definition in. The transferability that the claimant and anybody approaching retirement age have has to meet is defined by 202.00f, which means, and also by 404.1568d, as counsel pointed out, which is there must be very little, if any, vocational adjustment. All right. Thank you. I think we've exceeded your time. Just in fairness, I'll give you a minute for rebuttal if you'd like it. Thank you for your argument. I'd like to just say very quickly that this range language is critical, and she's counsel is not bringing in this concept of vocational adjustment of what the grids have established. In response to your question of other guidance, 82-41, it gives examples, and I want to point you to one of the examples of a carpenter, and they say a carpenter at advanced age who's limited to sedentary. That's the same factual situation we have except it's light, but because he's a little younger, sedentary ends up being in the same grid area. He or she would most likely find few occupations performed in the seated position which utilize specific work skills learned and used in the construction carpentry and may be unable to find transferability. That's saying they may find few occupations, so therefore you're probably not going to find transferability. It's not saying if there's one occupation with a significant number of jobs that there's no transferability. Transferability of skills is one of the factors. It's not vocational adjustment, though. The final thing I will say is just that the line of cases that talk about a substantial number of jobs being 1,500 or whatever, those are inapplicable here because those are dealing with situations in which the grid does not apply. Here the grid applies. There's specific language in the grid of the significant range language that sets the parameters that you have to deal with. You can't. Thank you. I have one question. Just a moment. One more question. Do you agree with your opponent that there is no factual dispute that she can perform the occupation of being a companion? That's how she started her argument. We have not challenged. Well, no, not that she has the capacity, the physical and mental capacity. I don't challenge that. That she can vocationally adjust to it as that legal term is used in the regulations, I challenge that. Thank you. Thank you. The case just argued of Lansbury v. Barnhart is submitted. Thank both counsels for your argument this morning.
judges: Hug, Alarcon, McKeown